

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br>One LG phone Model: LM-Q710MS IMEI: 351603100915533 | Case No.<br>**'19MJ9666** |



FILED

2019 JUN -4 A 10: 26

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, which is incorporated by reference.

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 952/960 | Importation of a controlled substance |

The application is based on these facts:
See Affidavit of Homeland Security Investigations Special Agent John Otis, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

John Otis, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/4/19

*Judge's signature*

City and state: El Centro, CA

Ruth Bermudez Montenegro, Magistrate Judge
*Printed name and title*

**ATTACHMENT A-1**

PROPERTY TO BE SEARCHED

One LG phone
Model: LM-Q710MS
IMEI: 351603100915533

("TARGET TELEPHONE #1")

currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 2100 Waterman Ave Suite 100 (Seized Property Vault).

# **ATTACHMENT B-1**
ITEMS TO BE SEIZED

Authorization to search the cellular/mobile telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/mobile telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 15, 2018, up to and including December 27, 2018:

a. tending to indicate efforts to import fentanyl, or some other federally controlled substance from Mexico into the United States, or possess and/or transport with the intent to distribute federally controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of fentanyl, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of fentanyl, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substances within the United States;

d. tending to identify travel to or presence at locations involved in the importation of fentanyl, or some other federally controlled substance from Mexico into the United States, or possession and/or transportation with the intent to distribute federally controlled substance within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952 and 960.



# AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

I, John Otis, being duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an applications for search warrants in furtherance of a narcotics smuggling investigation conducted by Department of Homeland Security, Homeland Security Investigations Special Agents for the following electronic devices:

   a. one LG phone, Model: LM-Q710MS, IMEI: 351603100915533 ("TARGET TELEPHONE #1"), described in Attachment A-1 (incorporated herein by reference);

   b. one Tech4U phone, Model: Armor, IMEI: 355496090207433 and IMEI: 355496090207441 ("TARGET TELEPHONE #2"), described in Attachment A-2 (incorporated herein by reference),

(collectively the "TARGET TELEPHONES"), which were was seized from Jose Antonio SAUCEDA on December 27, 2018, incident to his arrest for importation of fentanyl at Calexico, California West Port of Entry.

2. The TARGET TELEPHONES are currently in the possession of the Department of Homeland Security, Homeland Security Investigations, Immigration and Customs Enforcement, 2100 Waterman Ave Suite 100 (Seized Property Vault).

3. I seek authority to search the TARGET TELEPHONES for evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952 and 960, as described in Attachments B-1 and B-2 (incorporated herein by reference) for the period from May 15, 2018, through December 27, 2018.

## TRAINING AND EXPERIENCE

4. I am a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been a federal law enforcement officer since August 2008. I am currently assigned

AFFIDAVIT IN SUPPORT OF APPLICATION         1
FOR SEARCH WARRANT

to a Contraband Smuggling group in Calexico, California. My duties include investigating the illicit trafficking of controlled substances into the United States. I have received specific training in narcotics investigations and the methods used by narcotics traffickers to import and distribute drugs. I have investigated numerous drug trafficking cases, using many investigative techniques. I have also worked and consulted with many law enforcement officers experienced in drug trafficking investigations.

5. I have investigated illicit controlled substance trafficking in Calexico and surrounding areas. I have had formal training and experience in controlled substance investigations and I am familiar with the way controlled substances are manufactured, packaged, marketed, and consumed. I completed trainings on narcotic investigations that included classroom and field training in the complete investigations of narcotics, sales of narcotics, and the culture of the narcotic sales community. I have received training in the identification of all types of controlled substances by sight and odor. In the course of my employment, I have become familiar with the ordinary meaning of controlled substance slang and jargon, and I am familiar with the manners and techniques of manufacturers and traffickers in controlled substances as practiced locally.

6. As an agent, I have participated in numerous major narcotic trafficking investigations. I have been present and participated in undercover surveillance operations, the purchase of large amounts of narcotics, vehicle stops with large seizures of narcotics recovered, and interviewed many suspects who were arrested to further enhance my training and understanding of the narcotics trafficking industry.

7. During the course of my duties and while assisting other law enforcement personnel, I have interviewed or conversed with countless narcotic users. From these conversations and interviews, I have become familiar with the manner in which controlled substances are packaged, marketed and consumed.

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

2

8. Through the course of my training, investigations and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. Conspiracies involving narcotics smuggling generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging cell phone applications such as WhatsApp, social networking messages, and videos reflecting co-conspirators or illegal activity.

9. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in controlled substance smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, WhatsApp and other texting applications, the internet, video, social networking sites, and voice messages;

    b. Drug smugglers will use WhatsApp and other encrypted texting applications on cellular telephones to communicate because they believe that these services insulate their communications from law enforcement;

    c. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS     3

    d.    Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

    e.    Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

    f.    Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity including the presence and location of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

    g.    Drug smugglers will use cellular telephones to communicate with each other regarding payment and other financial arrangements relating to the transportation of their illegal cargo.

11.    The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews; my review of documents related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; conversations with other agents experienced in controlled substance investigations, and information gained through my training and experience. All the dates, times, and amounts listed in this affidavit are approximate. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for search warrants, it does not set forth each and every fact that I or others have learned during the course of this investigation.

//

//

//

//

//

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS    4

## FACTS SUPPORTING PROBABLE CAUSE

### Arrest of Michelle De La Rosa

12. On or about December 17, 2018, Michelle DE LA ROSA attempted to enter the United States from the Republic of Mexico through the vehicle lanes at the Calexico, California West Port of Entry (POE). De LA ROSA was the driver, registered owner, and sole occupant of a 2013 Honda Civic bearing California license plate 8GFY242.

13. CBP Officers discovered fifty-eight (58) packages hidden inside the floor of De LA ROSA's vehicle. The substance inside the packages field tested positive for methamphetamine. The total weight of the packages was 31.82 kilograms of methamphetamine.

14. After DE LA ROSA's arrest, she waived her *Miranda* rights and agreed to speak with agents. DE LA ROSA denied knowledge of the drugs in the vehicle and stated she went to visit her boyfriend Jose SAUCEDA in Mexicali. DE LA ROSA claimed that SAUCEDA took her car to get window tinting for a couple of days.

15. DE LA ROSA admitted that she helped SAUCEDA smuggle drugs previously. DE LA ROSA stated that SAUCEDA would smuggle pills through the Port of Entry. DE LA ROSA stated that she would drive SAUCEDA and the drugs from Calexico to Phoenix, Arizona.

16. DE LA ROSA was charged in the Southern District of California, Case No. 19-CR-189-GPC, with importation of methamphetamine. A continued motion hearing/trial setting in her case is currently set for June 28, 2019.

### Arrest of Jose Antonio Sauceda

17. Ten days after DE LA ROSA's arrest, on December 27, 2018, at approximately 12:15 p.m., Jose Antonio SAUCEDA attempted to enter the United States from the Republic of Mexico through the pedestrian lanes at the Calexico, California West Port of Entry (POE).

18. Customs and Border Protection Officer (CBPO) Z. Nazary was assigned to pedestrian lanes. CBPO Nazary received a negative custom declaration from SAUCEDA. SAUCEDA stated that he was a United States Citizen and that he was going to Calexico, CA. CBPO Nazary referred SAUCEDA to secondary based on a computer-generated alert. Canine Enforcement Officer Mcgee searched SAUCEDA in with the assistance of a Narcotics/Human Detection Dog (NHDD). The NHDD alerted to SAUCEDA.

19. CBPO J. Robles searched SAUCEDA and found a bulge in SAUCEDA's groin area. CBPO Robles examined the bulge and found four packages of blue pills. Laboratory tests showed that the blue pills were fentanyl. The total weight of the substance was 543 grams of fentanyl.

20. Officers placed SAUCEDA under arrest for violating Title 21 United States Code, Sections 952 and 960, Unlawful Importation of a Controlled Substance.

21. At the time of his arrest, SAUCEDA was in possession of the TARGET TELEPHONES. The CBPOs seized the TARGET TELEPHONES from SAUCEDA. No prior attempts to download the contents of the TARGET TELEPHONES were made.

22. After his arrest, SAUCEDA waived his *Miranda* rights and agreed to speak with agents. SAUCEDA admitted he knew he was bringing drugs into the United States, and this was the second time he had imported drugs into the United States. SAUCEDA stated he previously brought drugs from Mexico on December 26, 2018, and delivered them to Phoenix, Arizona. SAUCEDA stated that on this occasion, he was likewise attempting to go to Phoenix to deliver the drugs. SAUCEDA claimed he was paid six hundred dollars for each trip.

23. SAUCEDA was charged in the Southern District of California, Case No. 19-CR-0273-CAB, with importation of fentanyl. On March 12, 2019, SAUCEDA plead guilty to violating Title 21 United States Code, Section 952 and 960. SAUCEDA's sentencing hearing is set for June 7, 2019.

24. SAUCEDA's crossing history shows that in the last eighteen months, he had forty-nine crossings from Mexico into the United States in several different vehicles as well as pedestrian crossings. Additionally, SAUCEDA and DE LA ROSA crossed together five times in four different vehicles.

25. On May 15, 2018, SAUCEDA and DE LA ROSA crossed into the United States in a 2004 Nissan SUV with Arizona plates CCS0267. DE LA ROSA and SAUCEDA attempted to cross the same Nissan SUV back into Mexico, but the vehicle was rejected by Mexican Customs and returned to Calexico, California west port of Entry. CBPO officers then inspected the vehicle and discovered a hidden non-factory compartment in the gas tank. The compartment was empty. At the time of the attempted crossing on June 30, 2018, DE LA ROSA was the driver and SAUCEDA was the passenger of the Nissan.

26. SAUCEDA, through his counsel, denied any knowledge of his former girlfriend De La Rosa's involvement in drug smuggling, and claimed that he does not know who she might be working for. SAUCEDA's claims appear to contradict De La Rosa's admissions that she helped SAUCEDA smuggle drugs on a prior occasion.

27. Based upon my experience and investigation in this case, I believe that SAUCEDA, as well as other persons as yet unknown, were involved in an on-going conspiracy to import fentanyl or some other federally controlled substance. Based on my experience investigating narcotics smugglers, I also believe that SAUCEDA may have used the TARGET TELEPHONES to coordinate with co-conspirators regarding the importation and delivery of the methamphetamine, and to otherwise further this conspiracy both inside and outside the United States. I also know that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, messages sent via texting applications such as WhatsApp, email messages, messages and posts from social networking sites like Facebook, photographs, videos, and

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS

7

other digital information are stored in the memory of cellular telephones which identify other persons involved in narcotics trafficking activities.

28. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of SAUCEDA, and his co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, text messages, messages from texting applications like WhatsApp, messages and posts from social networking sites like Facebook, photographs, videos, and other digital information are stored in the memory of the cellular telephones described herein. Because the TARGET TELEPHONES has been in the custody of HSI since the date of SAUCEDA's arrest, I believe that this information continues to be stored on the TARGET TELEPHONES.

29. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in getting their valuable cargo to its destination within the United States. In this case, evidence supports that probable cause exists to search the TARGET TELEPHONES for information dating back to May 15, 2018. This is based upon a review of SAUCEDA's crossing history with DE LA ROSA, including in the vehicle that had a hidden non-factory compartment in the gas tank.

## SEARCH METHODOLOGY

30. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS    8

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

31.   Following the issuance of these warrants, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of these warrants.

32.   Based on the foregoing, identifying and extracting data subject to seizure pursuant to these warrants may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrants are signed, absent further application to this court.

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS     9

## CONCLUSION

33. Based on all of the facts and circumstances described above, there is probable cause to believe that SAUCEDA used the TARGET TELEPHONES to facilitate the offense of importing methamphetamine. The TARGET TELEPHONES was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

34. There is also probable cause exists to believe that evidence and instrumentalities of illegal activity committed by SAUCEDA continues to exist on the TARGET TELEPHONES.

35. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I know that the items to be seized set forth in Attachments B1 and B2 (incorporated herein) are likely to be found in the property to be searched described in Attachments A1 and A2 (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Special Agent with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachments A1 and A2, and seize the items listed in Attachments B1 and B2.

John Otis
HSI Special Agent

Subscribed and sworn to before me this day of June 4, 2019.

HON. Ruth Bermudez Montenegro
United States Magistrate Judge

AFFIDAVIT IN SUPPORT OF APPLICATIONS FOR SEARCH WARRANTS    10